IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 25-408-RGA |
| | ) |
| VIDEOAMP, INC., | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Presently before the Court is the motion of Defendant VideoAmp, Inc. ("Defendant" or "VideoAmp") to dismiss the Complaint on the grounds that the asserted claims of the only patent-in-suit are directed to ineligible subject matter under 35 U.S.C. § 101. (D.I. 10). For the reasons set forth below, the Court recommends that Defendant's motion be GRANTED.

**I.     BACKGROUND**

The present case is the second between two large media-audience measurement companies. Two years ago, Plaintiff the Nielsen Company (US), LLC ("Plaintiff" or "Nielsen") sued Defendant in this District, asserting claims of infringement of U.S. Patent Nos. 11,871,058 and 11,856,250. *See Nielsen Company (US), LLC v. VideoAmp, Inc.*, C.A. No. 24-123-RGA (D. Del. Jan. 31, 2024). On March 31, 2025, Judge Andrews found all asserted claims of the two patents directed to ineligible subject matter under § 101 and dismissed the complaint. *See Nielsen Co. (US), LLC v. VideoAmp, Inc.*, C.A. No. 24-123-RGA, 2025 WL 961421 (D. Del. Mar. 31, 2025). Days after the first case was dismissed, Plaintiff initiated round two against Defendant, accusing Defendant here of infringing U.S. Patent No. 12,063,402 ("the '402 Patent"). (D.I. 1).

The '402 Patent, entitled "Methods and Apparatus to Correlate Census Measurement Data with Panel Data," is generally directed to associating identified user data with media being

displayed. ('402 Patent at Abstract). Plaintiff alleges that Defendant infringes claims 1-2, 4, 6-7, 9, 11-13, 15-16, 18, 20-23, 25-26 and 30 of the '402 Patent. (D.I. 1 ¶ 59). Claim 21 is an independent claim[1] and it recites:

> 21. A method comprising:
>
> accessing demographic information indicative of a characteristic of an audience member associated with a mobile phone located within a reference area associated with a reference location during a time interval, wherein the demographic information is based on a server:
>
> receiving a message sent from the mobile phone associated with the audience member, wherein the message comprises a geographic location of the mobile phone and an identifier associated with the mobile phone, wherein the identifier is associated with the demographic information, and wherein the geographic location of the mobile phone is derived from a positioning system of the mobile phone;
>
> and
>
> determining that the geographic location of the mobile phone is within the reference area associated with the reference location by comparing the geographic location of the mobile phone to the reference area associated with the reference location, wherein the reference location is stored in a reference database;
>
> accessing media identifying information associated with media content presented within the reference area during at least a portion of the time interval; and
>
> associating the media identifying information with the demographic information responsive to determining that the media content was presented within the reference area during at least the portion of the time interval.

('402 Patent at Claim 21).

On May 26, 2025, Defendant moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the asserted claims of the '402 Patent are directed to ineligible

---

[1] The parties agree that claim 21 is representative for purposes of the pending motion. (D.I. 11 at 7-9; D.I. 15 at 6 n.5).

subject matter under § 101. (D.I. 10 & 11). Briefing was complete on June 27, 2025. (D.I. 15 & 17).

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Mayer*, 605 F.3d at 230; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "[P]atent eligibility may be resolved at the Rule 12 stage only if there are no plausible factual disputes after drawing all reasonable inferences from the intrinsic and Rule 12 record in favor of the non-movant." *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022).

### B.     Patent-Eligible Subject Matter

Section 101 of the Patent Act provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. The Supreme Court has long recognized three exceptions to the broad categories of subject matter eligible for patenting under

§ 101: laws of nature, physical phenomena and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). These exceptions "are 'the basic tools of scientific and technological work' that lie beyond the domain of patent protection." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012)); *see also Alice*, 573 U.S. at 216. A claim to any one of these three categories is directed to ineligible subject matter under § 101. "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217; *see also Mayo*, 566 U.S. at 77-78. First, at step one, the Court determines whether the claims are directed to one of the three patent-ineligible concepts. *Alice*, 573 U.S. at 217. If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018). If, however, the Court finds that the claims at issue are directed a patent-ineligible concept, the Court must then, at step two, search for an "inventive concept" – *i.e.*, "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18 (alteration in original) (quoting *Mayo*, 566 U.S. at 72-73).

        1.      Step One of the *Alice* Framework

At step one of *Alice*, the "claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (step one looks at the "focus of the claimed advance

4

over the prior art" to determine if the claim's "character as a whole" is to ineligible subject matter). In addressing step one of *Alice*, the Court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena or laws of nature. *Alice*, 573 U.S. at 217; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

### 2. Step Two of the *Alice* Framework

At step two of *Alice*, in searching for an inventive concept, the Court looks at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more." *Alice*, 573 U.S. at 218; *see also McRO*, 837 F.3d at 1312. This second step is satisfied when the claim elements "involve more than performance of 'well understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer*, 881 F.3d at 1367 (internal quotation marks and citation omitted); *see also Mayo*, 566 U.S. at 73. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art . . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Whether claim elements or their combination are well-understood, routine or conventional to a person of ordinary skill in the art is a question of fact. *Berkheimer*, 881 F.3d at 1368.

At both steps of the *Alice* framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB,

5

2018 WL 4660370, at * 5 (D. Del. Sept. 28, 2018) (citing *Amdocs (Israel) Ltd v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

### III.    DISCUSSION

#### A.    Step One of the *Alice* Framework

Defendant argues that claim 21 is directed to the abstract idea of "associating demographic data with media content using location." (D.I. 11 at 9). Focusing on the individual limitations and how they fit together, Defendant insists that claim 21 is nothing more than the collection, analysis and association of data relating to the viewer and the consumed media. (*Id.* at 9-11). Relying on *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280 (Fed. Cir. 2024), and similar cases, Defendant emphasizes that claims directed to functionally-drafted steps of collecting, analyzing and presenting information using conventional technology are repeatedly (and consistently) found to be directed to abstract ideas. (D.I. 11 at 11). In Defendant's view, claim 21 suffers the same fate.

Plaintiff argues that claim 21 recites a technological solution to the "Out-of-Home Problem" – *i.e.*, a technological problem of how to accurately report demographic information for individuals who watch media content outside of their homes, such as at a bar. (D.I. 15 at 4 & 9). According to Plaintiff, claim 21 recites (1) geolocating an audience member using their mobile phone, (2) comparing that location to the location of out-of-home media being displayed to determine whether the audience member is in the location where the media is being displayed and (3) associating demographic information for the audience member with the media content. (D.I. 15 at 9; *see also* '402 Patent FIGs. 6 & 7). Focusing on the use of the mobile phone and its location and messaging capabilities, Plaintiff maintains that claim 21 is not directed to the result of demographic audience measurement, but rather a "specific technological solution to the Out-of-Home problem." (D.I. 15 at 9-10). In arguing that claim 21 is directed to more than the mere

collection and analysis of data, Plaintiff attempts to fit within the claims found non-abstract in *Gracenote, Inc. v. Free Stream Media Corp.* (*Gracenote R&R*), C.A. No. 18-1608-RGA, 2019 WL 5684491 (D. Del. Nov. 1, 2019), *report and recommendation adopted*, 2019 WL 6728450 (D. Del. Dec. 11, 2019), and *Thales Visionix Inc. v. United States*, 850 F.3d 1343 (Fed. Cir. 2017).

At *Alice* step one, claims directed to an improvement in computer functionality are generally patent-eligible. *See, e.g.*, *Enfish*, 822 F.3d at 1335-36; *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303-06 (Fed. Cir. 2018). In contrast, claims that aim to improve an abstract idea by merely invoking a computer as a tool are generally not patent-eligible. *See, e.g.*, *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1315-18 (Fed. Cir. 2021); *Berkheimer*, 881 F.3d at 1366-67; *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1367-68 (Fed. Cir. 2015); *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364-65 (Fed. Cir. 2020). "In cases involving software innovations, this inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies [as] an abstract idea for which computers are invoked merely as a tool." *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020). The Court ultimately agrees with Defendant that the claims are directed to an abstract idea – not to an improvement in the functioning of technology.

The '402 Patent is generally directed to audience measurement. ('402 Patent at 1:25-26). As the specification explains, "audience measurement of media . . . often involves collection of media identifying data . . . and people data." (*Id.* at 1:31-39). Media may be any type of content such as television, radio, webpages, streamed content, etc. (*Id.* at 1:31-36). Media identifying data includes channel identification and how long content was watched (*id.* at 1:37-40), while people data may include user identities and other demographic data for the media consumer (*id.* at

1:40-42). Media identifying data and people data can be combined to create "media exposure data indicative of amount(s) and/or type(s) of people that were exposed to specific piece(s) of media." (*Id.* at 1:42-45). The specification goes on to explain that monitoring impressions of media (*e.g.*, online media) is "useful for generating impression statistics for the online media" (*id.* at 2:35-38) and, further, that "companies and/or individuals want to understand the reach and effectiveness of the media (e.g., content and/or advertisements) that they produce" (*id.* at 3:57-60). Prior methods of audience measurement primarily relied on collecting data from individuals who volunteered to participate (referred to as panelists). (*Id.* at 4:13-34). The panelists would provide demographic information via telephone interview or other surveying techniques. (*Id.* at 4:20-55). When the consumed media is directed at large groups of people not linked to a particular home, however, prior methods of audience measurement employed a server technique that did not distinguish between panelists and non-panelists in terms of demographics or consumed media. (*Id.* at 3:60-4:12). The invention claimed in the '402 Patent attempts to associate demographic data of individuals consuming media outside the home by employing mobile phones to collect and send location and demographic data without relying on the drawbacks of the server technique.

      Turning to the claims, claim 21 is directed to "a method" and it recites "accessing demographic information" based on a server "receiving a message" from the audience member's mobile phone and "determining" that the geolocation of the mobile phone is within a reference location displaying media content, "accessing media identifying information associated with the media content presented" and "associating the media identifying information with" the retrieved demographic information. ('402 Patent at Claim 21). Viewing the focus of the claim as a whole, claim 21 is directed to the collection of certain types of data (viewer's location and other demographics) and association of that data with other types of data (identity of media being played

8

in the same location as the viewer). And the claim is drafted in broad functional language, claiming the ultimate result of associating viewer data and media data rather than any particular method of achieving that result.[2] This is the precise type of claiming that the Federal Circuit routinely finds directed to an abstract idea. *Mobile Acuity*, 110 F.4th at 1286, 1292-93 (generalized "receiving information" and "associating information" steps are abstract); *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir. 2023) (holding that "matching a GPS location indication with a geographic location" is abstract).

Plaintiff's comparisons to *Gracenote* and *Thales* are unavailing. In *Thales*, the patent sought to solve a problem for "tracking inertial motion of an object on a moving platform." 850 F.3d at 1345. According to the specification, the invention deviated from the "conventional approach of measuring inertial changes with respect to the earth" by instead using inertial sensors to "directly measure the gravitational field in the platform frame," thus increasing the accuracy of position information. *Id.* To achieve this, the claims recited "a first inertial sensor mounted on the tracked object" alongside "a second inertial sensor mounted to the moving reference frame" and an element to receive signals from the two sensors and determine the orientation of the object relative to the moving frame using those signals. *Id.* at 1345-46. In finding that the claims were directed to a non-abstract technological improvement, the Federal Circuit emphasized the use of "inertial sensors in a non-conventional manner to reduce errors in measuring the relative position and orientation of a moving object on a moving reference frame." *Id.* at 1348-49. Rather than an

---

[2]    Plaintiff's own expert characterizes the claims of the '402 Patent using broad result-oriented language. (*See* D.I. 1, Ex. 2 ¶ 25 ("[A]ll the claims of the '402 Patent recite the combination of (1) receiving an identifier of a mobile device that is associated with demographic data about the mobile device user, (2) receiving the mobile device's location, (3) accessing media identifying information about media content presented within the reference area during a period of time, and (4) associating the demographic data with the media identifying information.")).

abstract idea, the claims were directed to an improvement in technology – namely, a "new and useful technique for using sensors to more efficiently track an object on a moving platform." *Id.* at 1349.

In *Gracenote*, the technology was focused on solving a problem with displaying advertising and watermarking content on multimedia broadcasts. *Gracenote R&R*, 2019 WL 5684491, at *4. As Judge Fallon noted, the focus of the claims was on a "technical solution" that improved "the functionality of the television or other multimedia playback device." *Id.* The claims "recit[ed] a specific method of generating local fingerprints at a television, comparing those local fingerprints to a reference fingerprint, and replacing an advertisement or taking another action upon finding a match." *Id.* at *5. In reaching that conclusion, Judge Fallon found the claims analogous to those found non-abstract in *Thales*, particularly in the unconventional way the claims solved a problem rooted in technology. *See id.* at *6 ("Like the claims in *Thales*, which are directed to systems and methods of using inertial sensors in a non-conventional manner to reduce errors in measuring the relative position between the helmet and the airplane, the asserted claims [here] are directed to systems and methods of using fingerprints in a non-conventional manner to increase the accuracy of the location of a given time point of a multimedia signal by using a segment of the signal itself."). In adopting Judge Fallon's R&R, Judge Andrews agreed that the *Gracenote* claims were similar to those in *Thales*. *Gracenote*, 2019 WL 6728450, at *3.

Claim 21 of the '402 Patent is not directed to solving the same type of problem as in *Thales* and *Gracenote*. In both of those cases, the claims were focused on solving a problem in the functioning itself of technology – position detection with inertial sensors (*Thales*) or fingerprinting multimedia (*Gracenote*). But here, claim 21 is not directed to a problem rooted in the functioning of technology. Instead, the claim attempts to solve the problem of associating viewer data with

10

media consumed outside the home. (*See* '402 Patent at 3:56-4:16 & 18:66-19:3). That is fundamentally a problem rooted in human behavior. (*See id.* at 1:42-45 & 3:57-63 (linking data helps media companies understand the reach of content and its effectiveness "at influencing user behavior")). And claim 21 purports to solve that problem using generic technology to collect and analyze data about that out-of-home human behavior. When viewed as a whole against the backdrop of the problem the invention is aimed at solving, claim 21 is very different than *Thales* and *Gracenote*.

In the Court's view, claim 21 is more analogous to the claims in *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016). There, the claims were directed to methods and systems for detecting events occurring on a power grid in real time, comprising the steps of receiving and analyzing data streams from various locations on the grid, displaying the results and providing an indication of the grid's vulnerability based on the collected data. The focus of the claims was not on improving the functioning of any power grid monitoring technology but instead on "collecting information, analyzing it, and displaying certain results of the collection and analysis." *Id.* at 1353. In reaching its result, the Federal Circuit cited over a dozen of its own cases that consistently found the collection, analysis and presentation of data directed to an abstract idea. *Id.* at 1353-54. Rejecting the analogy to *Enfish*, the Federal Circuit found that "the focus of the claims [here] is not on . . . an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Id.* at 1354; *see also id.* ("The advance they purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions. They are therefore directed to an abstract idea."). The same is true here. Claim 21 is directed to a method of collecting information (geographic and demographic information for an audience

11

member), analyzing that information (comparing location information with reference location) and associating the collected information with other information relating to media content. As in *Electric Power*, the focus of the claim is on collecting and analyzing data – not any improved technology for doing so. That is an abstract idea.

Ultimately, Plaintiff's step one arguments essentially hinge on claim 21's use of a mobile phone to automatically sense location data and then collect and provide location and demographic data for an audience member. (D.I. 15 at 8-9). In Plaintiff's view, this is an improvement in audience-measurement technology that should save the claim from abstraction. (*Id.*). The Court disagrees. Viewed as a whole, the focus of the claim is a method of collecting and associating audience member data with media data – an abstract process that requires no specific technology at all. Using a generic mobile phone to perform that abstract process is not what the *Enfish* court meant by a technological improvement that affects the "directed to" inquiry at step one. *See Elec. Power*, 830 F.3d at 1354 (citing *Enfish*, 822 F.3d at 1335-36). That is true even if the mobile phone makes the abstract process faster, more efficient or usable in new environments. A new or improved abstract idea is still an abstract idea. *See Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1363 (Fed. Cir. 2023) (purported advance over prior art by using mobile phone does not change analysis at step one where "the claims are directed to nothing more than performing the abstract idea of matching on a mobile phone") (citing *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("[A] claim for a new abstract idea is still an abstract idea.")). The purported technological improvement here does not actually improve the functioning of any particular technology, and it cannot save claim 21 at step one. *Elec. Power*, 830 F.3d at 1354.

In sum, claim 21 is directed to the abstract idea of collecting location and demographic information about an audience member and associating the demographic information with media

content displayed at their location. Having found claim 21 is directed to an abstract idea, the Court proceeds to *Alice* step two.

### B. Step Two of the *Alice* Framework

At step two, Defendant contends that there is no inventive concept because claim 21 only utilizes "generic components" in "conventional ways." (D.I. 11 at 14). Plaintiff does not dispute that all of the components recited in claim 21 are conventional. (D.I. 15 at 17-20). Indeed, the specification makes clear that conventional technology is used to implement the invention of claim 21. ('402 Patent at 6:4-31 (server may be disk arrays or multiple desktop computers, laptop computers, servers, etc. that are in communication using "any suitable wired and/or wireless network(s)"); 7:16-32 (client device is "a smartphone (e.g., an Apple® iPhone®, a Motorola™ Moto X™, a Nexus 5, an Android™ platform device, etc.)" or "any other type of device" such as tablet, laptop computer, desktop computer, camera, smart TV, etc.); 9:17-39 (client device includes positioning system that may use GPS, triangulation based on cellular towers or "any other past, present and/or future method for determining the device location of the client device . . . to provide location information of the client device 106 when accessing the requested media"); 16:31-57 (audience measurement entity server, media hosting server, client device, location handler, distance comparator, data storer, etc. all "may be implemented by hardware, software, firmware, and/or any combination of hardware, software and/or firmware")). Plaintiff nevertheless argues that claim 21 uses these components in an unconventional way, thereby providing an inventive concept that saves claim 21 at step two.[3] (D.I. 15 at 18-19). The Court agrees with Defendant.

---

[3] Plaintiff also argues that the claims do not preempt the field of audience measurement. (D.I. 15 at 20). But that is not sufficient to make claims patent eligible at step two; that is merely a necessary condition for a claim to potentially be patent eligible. *See Ariosa Diag., Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015).

13

Turning to the individual claim elements, all of the elements of claim 21 are directed to abstract processes or the use of generic technology to implement the abstract process. The "accessing demographic information," "accessing media information" and "associating the media identifying information with the demographic information" limitations of claim 21 merely embody the abstract idea of collecting and analyzing data, and they cannot provide an inventive concept. *See Mobile Acuity*, 110 F.4th at 1294 ("The abstract idea cannot supply the inventive concept that renders the invention significantly more than that abstract idea at step two." (cleaned up)). What remains in claim 21 is use of a mobile phone to collect and send an audience member's location and other demographic information. ('402 Patent at Claim 21 ("receiving a message sent from the mobile phone associated with the audience member, wherein the message comprises a geographic location of the mobile phone and an identifier associated with the mobile phone, wherein the identifier is associated with the demographic information, and wherein the geographic location of the mobile phone is derived from a positioning system of the mobile phone")). And determining whether the mobile phone is located within a certain reference location at a certain time. (*Id.* ("and determining that the geographic location of the mobile phone is within the reference area associated with the reference location by comparing the geographic location of the mobile phone to the reference area associated with the reference location")). But these receiving and determining claim elements also fail to provide the saving inventive concept at step two.

As an initial matter, as previously discussed, the technology employed is generic computer technology, and it is functioning in its conventional ways. The mobile phone is generic and off-the-shelf technology. ('402 Patent at 7:16-32). And the mobile phone may use any conventional technique to obtain location information. (*See id.* at 9:17-39). The servers are conventional. (*Id.* at 6:4-31). And the server compares the location of the mobile device to the reference location

using conventional methods. (*Id.* at 14:63-15:3 ("[T]he AME server 102 includes the example distance calculator 412 to calculate the distance between a device location . . . and one or more reference location(s) . . . . For example, the distance calculator 412 may use any distance-calculating algorithm to determine the distance between the two locations.")). The receiving and determining limitations therefore only use generic technology to function in conventional ways. That also cannot provide an inventive concept. *See Alice*, 573 U.S. at 223-24.

Each of the individual limitations recited in claim 21 embody the abstract idea or use generic technology to implement the abstract idea. The only remaining question is whether the ordered combination of steps in claim 21 provides a saving inventive concept. Relying on an expert declaration, Plaintiff's only real argument at step two is that the use of a mobile phone to perform audience measurement provides a sufficient inventive concept. (D.I. 15 at 18-20).[4] Specifically, Plaintiff asserts that "it was not well-understood, routine, or conventional in the audience measurement industry to use a mobile phone to determine an audience member's location, compare that location to a reference and use a match to determine media identity, and use the mobile phone to determine demographic information." (*Id.* at 18; *see also* D.I. 1 ¶¶ 30-34; D.I. 1, Ex. 2 ¶¶ 22-25). Plaintiff and its expert claim that moving the step of collecting the audience member's location and demographic information to a mobile phone was an improvement over prior systems, thereby providing an inventive concept. (D.I. 1 ¶¶ 17, 19, 27-; D.I. 1, Ex. 2 ¶¶ 17-26; *see also* '402 Patent at 3:56-4:20). But this is simply an argument that the overall invention was novel or unconventional. That is not the proper inquiry at step two. *See BSG Tech LLC v.*

---

[4] Plaintiff's allegations in the Complaint related to step two are identical to the assertions in Ms. Lee's declaration. (*Compare* D.I. 1 ¶¶ 24-38, *with* D.I. 1, Ex. 2 ¶¶ 16-30; *see also* D.I. 15 at 18 n.9 ("[E]verything asserted in the Lee Declaration is also asserted in the Complaint itself.")).

*Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("BSG Tech points to the '699, '294, and '652 patent specifications to argue that the asserted claims recite unconventional features that provide benefits over conventional prior art databases. But the relevant inquiry is not whether the claimed invention as a whole is unconventional or non-routine."); *Mobile Acuity*, 110 F.4th at 1294 (arguing that an inventive concept is missing from the prior art "is unavailing at step two, as 'a claim for a new abstract idea is still an abstract idea'" (quoting *Synopsis, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016))).

To the extent that Plaintiff is arguing the mobile phone harvests data collected from resident applications and sends that information to a server (with or without the mobile phone user's knowledge), that concept is not found in claim 21. (*See* D.I. 15 at 18-19; D.I. 1 ¶¶ 31-34; D.I. 1, Ex. 2 ¶¶ 23-25). All that the claim requires is that the mobile phone uses its positioning system to find its location and that it sends that location and demographic information to a server. There is no requirement that the location or demographic information be derived from some application tracking the mobile phone user. Nor does the claim require that the demographic information originate from the cellular provider. (D.I. 15 at 18). Plaintiff's purportedly inventive concepts are not found in the claim itself. And they cannot save the claims. *See RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("To save a patent at step two, an inventive concept must be evident in the claims."); *KOM Software Inc. v. NetApp, Inc.*, 697 F. Supp. 3d 203, 218 (D. Del. 2023) (Bryson, J., sitting by designation) ("[W]hat is required is for the patentee to point to the alleged improvement, consisting of an inventive concept that is embodied in the claims and described and enabled by the specification.").

Ultimately, claim 21 is comprised of claim elements that embody the abstract idea or use a generic mobile phone operating in a conventional way. Combining those elements as arranged

in claim 21 fails to transform the claim into something "significantly more" than the abstract idea. At best, claim 21 is directed to the use of a generic mobile phone to collect and associate an audience member's demographic information with media content displayed at their location. That is still an ineligible abstract idea. *See Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021) ("The claimed configuration does not add sufficient substance to the underlying abstract idea of enhancement – the generic hardware limitations of claim 1 merely serve as 'a conduit for the abstract idea.'" (quoting *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016))); *see also In re Killian*, 45 F.4th 1373, 1382-83 (Fed. Cir. 2022) ("Neither attempting to limit the use of the idea to a particular technological environment nor a wholly generic computer implementation is sufficient." (cleaned up)).

Because all of claim 21's elements either embody the abstract idea or are generic components used in conventional ways as taught by the specification, Plaintiff cannot change the eligibility result with its pleading or expert testimony. *See, e.g.*, *US Patent No. 7,679,637 LLC v. Google LLC*, — F.4th —, 2026 WL 174922, at *4 (Fed. Cir. Jan. 22, 2026) ("Conclusory allegations [cannot] 'alter what the patent itself states.'" (quoting *Sanderling*, 65 F.4th at 706)); *see also AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1380-81 (Fed. Cir. 2024) ("[Plaintiff's] amended complaint also failed to adequately allege an inventive concept in the ordered combination of claim limitations. Merely reciting an abstract idea performed on a set of generic computer components, as the claims do here, would not contain an inventive concept." (cleaned up)); *Nielsen*, 2025 WL 961421, at *6 ("Having concluded that claim 1 simply applies an abstract idea to a particular technological environment, I am not persuaded by Nielsen's argument, regardless of Ms. Lee's declaration."). Claim 21 is directed to ineligible subject matter under § 101. And because the parties agree that claim 21 is representative of the asserted claims of the

'402 Patent, all such claims are invalid as directed to ineligible subject matter, and the Court recommends that the Complaint be dismissed with prejudice.

IV.   **CONCLUSION**

For the foregoing reasons, the Court recommends that Defendant's motion to dismiss (D.I. 10) be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be limited to ten (10) pages and filed within fourteen (14) days after being served with a copy of this Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2). Any responses to the objections shall be limited to ten (10) pages and filed within fourteen (14) days after the objections. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: February 12, 2026

UNITED STATES MAGISTRATE JUDGE